IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VALERIA MCINTYRE,

    Plaintiff,

      v.

ECKERD CORPORATION,

    Defendant.

CIVIL ACTION FILE
NO. 1:06-CV-0371-TWT

## ORDER

This is an action for defamation and other state law claims.  It is before the

Court on the Defendant Eckerd Corporation's Motion for Summary Judgment [Doc.

24].  For the reasons set forth below, the Defendant's motion is GRANTED.

## I. BACKGROUND

The Plaintiff, Valeria McIntyre, was employed by the Defendant, Eckerd

Corporation, as a staff pharmacist beginning in 1999.  In late 2001, she requested and

was granted a transfer to store 2740 in Cumming, Georgia.  Around that same time,

the Defendant's corporate office observed a variance between the drugs that were

ordered and dispensed at store 2740.  Eckerd's loss prevention department opened an

investigation into these losses.  The Defendant conducted initial interviews of

T:\ORDERS\06\McIntyre\msjtwt.wpd

everyone who had access to the pharmacy, but failed to produce any information on the losses. When these losses stopped shortly thereafter, the investigation was closed.

In February 2002, the Plaintiff was informed by the Defendant's pharmacy district supervisor, Cindy Woolfolk, that because of customer complaints and lagging sales, Woolfolk wanted to transfer her to a different store location and bring in another pharmacist, Richard Byrd. The Plaintiff, who is African-American, responded by stating that she believed this decision was based on her race because the incoming pharmacist was white and because some of the store's customers were bigoted.[1] The Plaintiff subsequently filed a complaint with the Equal Employment Opportunity Commission, asserting that the transfer was being effectuated because of her race. Byrd was then hired as the new pharmacist at store 2740 in March 2002, but he voluntarily resigned after only two weeks. Following his resignation, Woolfolk alerted the Plaintiff that she was not going to be transferred.

In December 2002, a bottle of Percocet was missing from the pharmacy, causing the Defendant to reopen its investigation. As required by law, they also

---

[1]The Plaintiff felt that this proposed transfer was in direct response to complaints she had made to her employer following a January 2002 confrontation with a white customer in which the customer used the "n" word. The bigotry of some of store 2740's customers is confirmed by Woolfolk. She testified that she received approximately one or two complaints a month from customers who objected to the fact that store 2740 had an African-American female working as a pharmacist.

reported the loss to the United States Drug Enforcement Agency.  As part of this investigation, the Defendant's regional loss prevention manager, William Wells, authorized one of his investigators, Alan Hollingsworth, to install a hidden camera in the pharmacy.  Hollingsworth, with the assistance of pharmacy supervisor Mark Orlando,[2] also conducted several covert drug counts at the store during a six week period from January 6, 2003, to February 24, 2003.

Over the course of these six weeks, the loss prevention team discovered the following evidence: (1) 3,446 pills with a warehouse value of $2,973.98 were missing from the store; (2) the majority of the missing pills were hydrocodone products, specifically the Norco brand, which is a pain killer that has a high potential for abuse; (3) the Plaintiff was working 92% of the time on the dates when these pills were ordered and received; (4) the Plaintiff was observed in the store's parking lot after-hours on at least two occasions with no apparent purpose for being there; and (5) on February 16, 2003, the Plaintiff was observed on videotape taking pills off of a shelf that contained a brand of hydrocodone, pouring them into her hand, and making a motion toward her mouth.

---

[2]Orlando had replaced Woolfolk and become Eckerd's district pharmacy supervisor in North Atlanta.

Based on this evidence, Hollingsworth received authorization to interview the Plaintiff.  The interview occurred on February 26, 2003, in store 2740 from about 9:49 a.m. until 1:11 p.m.  The majority of the interview took place in the store manager's office.  According to Hollingsworth, during the course of this interview, the Plaintiff admitted that she had taken and consumed some Norco products without prescription or payment "just a few times."  The Plaintiff denies ever making this admission, however, and despite repeated requests by Hollingsworth, she refused to provide him with a written statement.

At some point during the course of the interview, Eckerd representatives contacted Dr. James Bartling, the intervention coordinator for the Georgia Board of Pharmacy and a dean at the Mercer School of Pharmacy.  According to the Defendant, Bartling was contacted for the purpose of convincing the Plaintiff to seek treatment. The Defendant maintains that if a pharmacist admits impairment, agrees to seek treatment, submits a written statement, and agrees to repay the dollar amount of the loss, Eckerd would place her on a leave of absence, hold her job open, and refrain from seeking criminal prosecution.  Bartling testified that he and the Plaintiff spoke for approximately fifteen minutes, during which time she admitted that she had taken some pills without prescription or payment but denied being impaired.  The Plaintiff

also disputes that she ever told Bartling that she had taken drugs without payment or prescription.

Soon after her conversation with Bartling concluded, the Plaintiff returned with Hollingsworth to the manager's office, but again refused to sign a written statement. The parties dispute what happened next.  She contends that when she stood and attempted to leave the interview, Hollingsworth grabbed her wrist and interfered with her attempt to leave, inflicting a bruise on her arm in the process.  The Plaintiff states that she then asked Hollingsworth if he was detaining her, at which time he released her arm.  Hollingsworth denies ever touching her or detaining her against her will. The Plaintiff then left the store.

At the instruction of Wells, Hollingsworth immediately contacted Forsyth County Police regarding the store's losses and filed a report.  In his written statement, Hollingsworth specified the amount of pills that were missing, their dollar value, and the details of Eckerd's loss prevention investigation.  He also supplied the police with Eckerd's investigative file, which included the videotape.  The Plaintiff was informed of her termination from Eckerd on March 3, 2003.  She was subsequently arrested and charged with unauthorized distribution of narcotics.  Following her entrance into a pretrial diversion program and agreement to submit to drug testing, the case against her was dismissed.

On June 19, 2003, the Plaintiff filed a second EEOC charge against Eckerd alleging race and sex discrimination, as well as retaliation. After the EEOC issued a Notice of Right to Sue, the Plaintiff filed an action in this Court on October 3, 2003, (McIntyre v. Eckerd Corp., Civil Action # 03-CV-3018). She alleged that she was terminated from her staff pharmacist position because of her race and/or her previous complaints of discrimination. The Court granted the Defendant's motion for summary judgment, dismissing the Plaintiff's federal law claims with prejudice and declining to exercise jurisdiction over her state law claims.

On February 7, 2006, the Plaintiff filed this lawsuit in the Superior Court of Fulton County, Georgia. The Defendant then removed it to this Court. The Plaintiff alleges several state law claims including: (1) defamation; (2) defamation of business reputation; (3) battery; and (4) willful and wanton misconduct. The Defendant now moves for summary judgment on all claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59

(1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. DISCUSSION

### A. Defamation and Defamation of Business Reputation

The Plaintiff contends that the Defendant defamed her and her business reputation by filing a report with Forsyth County Police and the Georgia Department of Drugs and Narcotics. In Georgia, three elements must be proven in order to establish that a statement constitutes defamation: (1) the statement was false; (2) the statement was malicious; and (3) the statement was published. O.C.G.A. § 51-5-1(a). Some communications, however, are deemed privileged under Georgia law and thus provide the speaker with qualified immunity to any defamation claim. Among these are "statements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned." O.C.G.A. § 51-5-7(3). This includes communications "made in good faith by the injured person in the prosecution of an inquiry regarding a crime which he believes to have been committed upon his property." Tetrault v. Shelton, 179 Ga. App. 746, 749 (1986) (quoting Taylor v.

Chambers, 2 Ga. App. 178(1) (1907)).  "For the defense of qualified privilege to exist, it must be made: (1) in complete good faith; (2) with an interest to uphold; (3) by a statement properly limited in scope; (4) on a proper occasion; and (5) by publication to a proper person."  Smith v. Vencare, Inc., 238 Ga. App. 621, 625 (1999); accord Rabun v. McCoy, 273 Ga. App. 311, 316 (2005).

Here, it is clear that Eckerd's representatives made the statements in the police report in complete good faith.  Eckerd videotaped the Plaintiff removing a bottle of medication from the same shelf on which Norco products were stored, pouring pills into her hand, and making a motion toward her mouth.  (Wells Dep. at 67.)  It is undisputed that dispensing drugs by hand is not a practice condoned by either Eckerd Pharmacy School or any state or federal agency.  (Id. at 68.)  The Plaintiff contends, however, that the statements made by Hollingsworth and approved by Wells were willfully false because Hollingsworth conceded that the videotape alone was not enough to justify police action.  (Hollingsworth Dep. at 141.)  This videotape was not the sum of the Defendant's evidence, however.   As stated previously, both Hollingsworth and Bartling further testified that the Plaintiff admitted taking drugs without prescription or payment.  (Hollingsworth Dep. at 110-112; Bartling Dep. at 47.)   Indeed, according to Hollingsworth, the Plaintiff specifically admitted consuming Norco products.  (Hollingsworth Dep. at 110.)  Additionally, Wells and

Hollingsworth had determined that she was working 92% of the time these pills were ordered and received.

The Court further finds that the Defendant's statements to the police were made to protect Eckerd's interest in its property and consisted only of information relevant to that loss. These statements were given directly to Forsyth County Police on standard police forms and the Defendant's loss prevention forms. The Court thus concludes that the Defendant is entitled to qualified privilege for its statements to the police.

Because the Defendant has affirmatively demonstrated a qualified privilege, the Plaintiff has the burden to set forth facts demonstrating the existence of a genuine issue for trial. Sparks v. Parks, 172 Ga. App. 823, 826 (1984). In other words, a defamed party can sustain her right of action if "the privilege is used merely as a cloak for venting private malice, and not bona fide in promotion of the object for which the privilege is granted." Id. at 825-26. Conclusory allegations are insufficient, however, without providing substantiating facts or circumstances, to raise a triable issue. Id. The Plaintiff contends only that Defendant's malice is demonstrated by Hollingsworth's willfully false statements. As discussed previously, this claim is without merit. Accordingly, summary judgment for the Defendant on this claim is warranted.

B. <u>Battery</u>

The Plaintiff next alleges battery based on Hollingsworth grabbing her arm and restraining her at the end of her interview.  The Defendant disputes the validity of this claim for several reasons.  Eckerd first argues that this charge cannot proceed because it was not included in the 2003 action and is thus barred by the statute of limitations. A renewal action is proper in Georgia if filed within six months after dismissal of the original lawsuit, even if the statute of limitations has run.  O.C.G.A. § 9-2-61(a).  A claimant is permitted, however, to bring only those claims that are the same or "substantially the same as the claims in the original action."  <u>Blier v. Greene</u>, 263 Ga. App. 35, 38 (2003).  "A defendant's liability cannot be enlarged beyond that indicated by the pleadings in the first case."  <u>Burns v. Dees</u>, 252 Ga. App. 598, 607 (2001) (citations and punctuation omitted).

The Defendant claims that because a battery claim was not included in the original lawsuit, the Plaintiff is barred from bringing that claim in the present action. The Court finds, however, that the originally filed complaint clearly indicates the grounds upon which the Plaintiff's battery claim rests.  The original lawsuit, which included a claim for false imprisonment rather than battery, stated that "[w]hen the Plaintiff attempted to leave the room in which she was being interrogated, Mr. Hollingsworth physically restrained her, inflicting bruises to her wrist and arm."  (Oct.

3, 2003 Compl., ¶ 19.)  The Defendant was thus put on notice as to the Plaintiff's potential claim for battery.  <u>See</u> Fed. R. Civ. P. 8.

The Defendant next contends that this claim was abandoned because, in the 2003 action, the Plaintiff failed to address the false imprisonment claim anywhere in her response to the Defendant's Motion for Summary Judgment.  <u>See</u> <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1322 (11th Cir. 2001) (holding that a claim included in complaint but not raised at summary judgment is deemed abandoned); <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995) (same). Because the Defendant raised this argument for the first time in its reply brief, the Court gave the Plaintiff the opportunity to respond.  <u>See</u> <u>International Telecommunications Exchange Corp. v. MCI Telecommunications Corp.</u>, 892 F. Supp. 1520, 1531 (N.D. Ga. 1995) ("Normally, a party may not raise new grounds for granting its motion in a reply. Where a party does raise new grounds in its reply, the Court may either strike the new grounds or permit the non-moving party additional time to respond to the new argument.")

In her subsequent response, the Plaintiff contends that she did in fact respond to this claim she mentioned the events upon which her false imprisonment claim was based in the Statement of Facts section of her original opposition brief.  She also points out that, in her Response to the Defendant's Statement of Facts in the 2003

action, she disputed the Defendant's summary of the encounter between her and Hollingsworth.  She contends this was sufficient to preserve her claim because "the key question is not *how* but *whether* Plaintiff's responsive papers addressed the issue." (Pl.'s Surreply, at 6.)  The Court cannot agree.  The Defendant's summary judgment motion in the 2003 action provided arguments as to each of the Plaintiff's federal and state law claims, discussing them in separate paragraphs labeled "A" through "E." The last of these, Section E, addressed her false imprisonment claim.  In the argument section of her opposition brief, the Plaintiff responded to each of the first four arguments with corresponding sections labeled "A" through "D."  The false imprisonment claim was not discussed in any way.  It thus defies logic for the Plaintiff now to argue that she indeed addressed the false imprisonment claim.

In support of her position that she needed only to mention her claim in some form or fashion to preserve it, the Plaintiff refers the Court only to an isolated statement from a Northern District of Georgia opinion.  In Bute v. Schuller Intern., Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998), the court explained, "[b]ecause plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned." (emphasis added).  The Plaintiff thus contends that she sufficiently "addressed" this false imprisonment claim by mentioning it in her statement of facts.  The Eleventh Circuit has clearly instructed, however, that:

> In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him."  <u>Ryan v. Int'l Union of Operating Eng'rs</u>, Local 675, 794 F.2d 641, 643 (11th Cir. 1986).  There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  <u>Blue Cross & Blue Shield v. Weitz</u>, 913 F.2d 1544, 1550 (11th Cir. 1990).  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.

<u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995).  Here, her response brief in that first action convinces this Court that the Plaintiff intended to provide arguments only as to the other four claims.  If she intended to contest the Defendant's motion as to false imprisonment, the burden of making an argument against summary judgment on this claim fell to her.  Because she made no such argument, this claim is deemed abandoned.  Accordingly, the Defendant's motion for summary judgment on this claim should be granted.

C. <u>Willful and Wanton Misconduct</u>

The Plaintiff contends that Hollingsworth's statements to Forsyth County Police were recklessly inaccurate and intentionally false.  "Wilful conduct is based on an actual intention to do harm or inflict injury.  Wanton conduct has been described as that 'which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent.'"  <u>Georgia Dept. of Transp. v. Strickland</u>, 279 Ga. App. 753, 754 (2006) (citation and punctuation omitted).  As discussed above, the

Defendant operated at all times within the law and reported the Plaintiff's possible criminal actions to the proper authorities.   Accordingly, summary judgment is warranted on this claim.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 24] is GRANTED.

SO ORDERED, this 2 day of March, 2007.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge